SORRELL v. MISSOURI, K. & T. RY. CO. OF TEXAS.   (No. 1789.)

(Court of Civil Appeals of Texas. Amarillo. April 13, 1921.)

1. Evidence ⬅20(2)—Court cannot judicially notice negligent speed of train.

In an action against a railway company for the death of its brakeman, struck by a passenger train going 25 to 30 miles per hour in passing a freight train waiting on a siding, the court cannot take judicial notice that the speed was negligent even on a stormy night.

2. Master and servant ⬅286(32)—Evidence held not to raise issue of negligence as to brakeman struck by train.

In an action against a railroad company for the death of its freight brakeman, who got off his engine while his train was on a siding to go toward the rear and was struck on the main track by a passenger train going 25 to 30 miles an hour, evidence held not to raise the issue of negligence in failing to slacken the speed; the signals indicating that the track was clear.

3. Master and servant ⬅137(5)—Engineer of passenger train passing freight on siding may assume freight crew will be in position of safety and need not reduce speed.

The engineer of a passenger train going 25 to 30 miles an hour and visible for two miles while approaching a siding occupied by a waiting freight train, with signals indicating clear track, is not bound to anticipate that members of the freight crew will be on the track so as to impose on him the duty to reduce his speed, but he has the right to expect that they will be in a position of safety and use reasonable diligence in taking such positions.

4. Master and servant ⬅289(40)—Evidence held not to present issue of discovered peril of brakeman jumping across track.

In an action against a railroad company for the death of a freight brakeman struck on the main track by a passenger train while his train was on a siding, testimony as to his attempt to jump across the track when he realized the danger held not to present the issue of discovered peril.

5. Master and servant ⬅137(5)—Railroad engineer's failure to signal not available as negligence.

Where an experienced freight brakeman was struck when he tried to jump across the main track ahead of a passenger train, which was visible for two miles, while his train was on a siding with signals indicating clear track, the engineer's failure to signal was not available as a ground of negligence.

6. Master and servant ⬅137(5)—Passenger engineer not required to reduce speed while passing siding.

That the engineer of a passenger train going 25 to 30 miles an hour when it was 100 yards from deceased, a freight brakeman going to the rear of his train waiting on a siding, saw him alight from the freight engine, did not impose upon the engineer the duty to reduce his speed while passing the siding.

Appeal from District Court, Dallas County; W. F. Whitehurst, Judge.

Action by M. P. Sorrell, administrator of F. B. Sorrell, deceased, for the benefit of himself and wife, against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for defendant, and plaintiff appeals. Affirmed.

J. H. Synnott, of Dallas, and John L. Dodson, of Van Horn, for appellant.

C. C. Huff and J. M. Chambers, both of Dallas, for appellee.

HALL, J. This is a suit by M. P. Sorrell, administrator, for himself and wife, for damages for alleged wrongful death of their unmarried son while employed as a brakeman, in which plaintiffs alleged that their son was killed by a passenger train. The material allegations in the petition as to negligence, stated in substance, are that at the time the freight train, upon which deceased was serving and was acting as brakeman, had stopped on a side track at a way station known as Sterrett; that the night was dark, and at the time of the accident it was raining; that after his freight train had pulled in on the siding it broke in two, and it became necessary for the deceased to descend from the engine and go back toward the rear of the train; that the passenger train was 3 miles away when first observed; that all unexpectedly deceased discovered it right upon him, and in a proper attempt to escape therefrom was struck thereby and hurled 150 feet; that the passenger train was then traveling 40 miles per hour, and it was impossible for the deceased to judge how near it was to him; that the servants operating the passenger train knew they were to pass a freight train operated by a crew; that they did not even know that the train would be safely within

the siding and owed the duty not to be traveling at such a rate of speed and to have their train under such control that, had said freight train not been safely in the clear, said passenger train could have been stopped within a hundred yards; that if it had been so traveling when its near approach was discovered by deceased, he would have had time to cross over the main track and escape injury; that by reason of the darkness, the rain, and the unexpected near approach of the passenger train, deceased was unable properly to judge the distance and rate of speed; that the crew in charge of the passenger train negligently ran it at the reckless speed of 40 miles per hour, failed to keep a proper lookout or use ordinary care to discover deceased, and failed to have said train under such control as to be able to stop the same and avoid injuring the deceased; that they negligently approached said siding three minutes ahead of time and at such a rate of speed as to make it impossible for them to stop or avoid injuring deceased; that they negligently refused to take into consideration the darkness, the condition of the ground, and that had they approached said siding at a less rate of speed they would not have passed said freight train while deceased was standing between the main track and the side track, or if deceased had been so standing, he would have had ample time to escape in front of said passenger train before it arrived.

The court directed a verdict for the defendant, and by appropriate assignments of error, this is the sole issue presented for review. M. P. Sorrell and wife testified by deposition that they were each 60 years of age; that their son, F. B. Sorrell, the deceased, lived with them until he was 23 years old; that at the time of his death he was contributing to their support and intended soon to return home and live with them on the farm and take care of them; that he was unmarried; that they had very little property; that their other children were poor and had their own families dependent upon them. It was shown that the plaintiff, M. P. Sorrell, was practically blind in one eye; that the other eye was defective; that he could do no work except under direction of some one else; that both he and his wife were decrepit. W. P. Sorrell, brother of deceased, testified that shortly before his death deceased had agreed to return home and take care of his mother and father during their declining years.

The witness Sullivan testified that he was the engineer in charge of the freight train on which deceased was a brakeman at the time of his death; that deceased was working as an extra freight brakeman upon a salary of $100 per month; that his train left Dallas about 9:30 at night, going southward; that according to his orders No. 10, a passenger train, was three hours late; that it would

take him about three hours to get to Velva, and when he arrived there he turned into the switch; after that he got more time and backed out of the switch and went on to Sterrett, four or five miles further down the line; that he ran as fast as he could from Velva to Sterrett; that he got into the side track at Sterrett about four or five minutes before the passenger train came by; after they pulled in to the siding, an accident happened and his train broke in two; that this was a long side track, and when the passenger train passed he was in the passenger track 15 or 20 car lengths; that the two tracks were about 14 or 15 feet apart; that deceased was on the engine at that time; the ground between the two tracks was level; that when he discovered his train had broken in two, he told deceased whose duty it was to go back and examine the train; that as soon as he spoke to deceased, who had his lantern in his hand, he got off the engine; that about five minutes before that time the deceased had held a fusee to see that the engine had gotten in the clear, but he had thrown it away at this time; that it was raining very hard at times and was raining at the time witness missed deceased from the engine; after the passenger train went by, witness got off the engine to look for deceased, and it was raining very hard; when he found the body of deceased, the rain had held up a little; that the fireman had told witness the deceased was killed; that he got a torch and went straight back; that deceased had been struck and he did not know how he happened to be on the track; that witness could see the passenger train coming when he stopped about 2 miles away; that the tracks were there 10 or 15 feet apart and the ground between them was level; that as his train took the side track, deceased lit a fusee to flag the passenger train in case it should arrive before they were in the siding; that he had 17 cars on the freight train; that if they could not make the siding it was deceased's duty to stop the passenger; that deceased could not stand between the two trains when the passenger was passing, except between the ends of the cars; that it would not be safe to stand between the two trains while the passenger train was passing; that he would be obliged to cross over the main track under such conditions; that they had been on the siding about three minutes when deceased was killed; that the passenger train was not running very rapidly; that its engineer would have had to stop if the freight train was not in the clear, and it was his duty to get the freight engine's number before he could pass and slow down for that purpose; that the passenger train, according to its schedule, must not pass Sterrett until 11:15, unless the freight train was in the clear, but that the freight was in the clear when it passed; that it would have been dangerous to stand between the trains, whether

230 S.W.—49

between the ends of the freight cars or not; that witness would have crossed the main line rather than stand there; that about the time the freight train got in the clear, they saw the passenger train coming, and he had Sorrell to throw the fusee away so that the engineer of the passenger train would know the track was clear and would not stop but would go on through; this was three or four minutes before the passenger train passed; that when he told Sorrell that the freight train had broken in two he expected Sorrell to get down and look after it; it was his duty to do the balance; that the passenger train would have had to stop if the freight train had not been in the clear, but, as it was, it could go on by so it got the number in passing; that the passenger engineer could see his number in passing, and it was not necessary for him to slack up in order to get the number; that the passenger train did not stop; that it had been running downgrade for 3 or 4 miles at the time it passed the freight train and killed Sorrell; that deceased was knocked the distance of four freight cars, judging from the place he was struck and the place where the body was found; that the passenger train was a superior train and had no orders except to wait for the freight at Sterrett.

The witness Whitlock testified that he was fireman on the freight train on which deceased was brakeman at the time of his death; that they got orders giving them until 11:15 to pass the passenger train at Sterrett; that they went from Velva to Sterrett pretty fast and got inside there at four minutes before the passenger train passed by; there their freight train broke in two; that they got in to the switch as quickly as they could to keep the passenger train from having to stop; that when the freight train stopped on the siding the engineer told deceased that it had broken in two and it was then deceased's duty to go back and look after the brake; that he started and got about half a car length from the engine; he had his white light; he was between the tracks; they are supposed to be about 14 or 15 feet apart; that the freight engineer was 20 or 25 car lengths from the south end of the passing track; that he saw deceased hit by the train; that deceased got down off the engine and started towards the rear; had gone about a car length from them and looked back and saw the passenger train close and looked as if he thought it was too close and as if he realized that it was too close; then he started to cross the main line; he made one step, and it did not seem like he was in such a hurry, and then the next step just made a long quick step and lit right between the rails and the engine hit him; that usually trainmen did not stand between tracks under such conditions; they got out from between them; that it seemed that Sorrell realized his danger and turned to jump

across the track; that deceased seemed to be a very cautious trainman; that it was a very bad night, was raining pretty hard at the time of the accident, and it was very dark; that it was so cloudy you could not see the stars; there were not many houses along there and none giving light; that it was 11:14 p. m. when deceased was killed; the surface between the tracks was moderately smooth; that the passenger train, when it struck deceased, was going 25 or 30 miles per hour; it made no stop, just went whizzing through; that when deceased tried to cross the track at a point about the tender of the freight train, the first step took him about to the end of the ties; then he hesitated a moment, as any one would, and tried to jump across ahead of the passenger train; that the passenger engine had an electric headlight and they had seen it about 3 miles away; that when deceased alighted from the freight engine, witness saw him by the light of the passenger train headlight; that this light was on him distinctly when he got to the tender of the freight engine; that until he started to cross the main line he was walking where any one would have walked between the two tracks; that when he was struck he was near the freight train and probably not within the rails of the main track; that witness did not think at that time it was dangerous to get off the engine; however, he realized that the passenger train was near; that it is not customary for railroad men to stand between the tracks under such circumstances; that witness does not regard it as safe; that as deceased walked away from the freight engine down the line his back was toward the approaching passenger train; that when he got off the light of the passenger engine was not sufficient for witness to see deceased; that on a clear night a passenger headlight will throw its light as far as 200 yards; that the passenger train was at least 100 yards away when Sorrell alighted from the engine.

[1-3] The foregoing statement is taken from the appellant's brief and presents their case in its most favorable light. From it we find ourselves unable to conclude that it raised the issue of defendant's negligence. At the time of the accident Sorrell's train was on the side track; he had thrown away his fusee, thus indicating to the engineer of the passenger train that the main track was clear and open. If the passenger's engineer could get the number of the freight engine while running, no reason is shown why he should stop or even reduce his speed, and Sorrell evidently did not expect the passenger train to do either. It was the duty of the freight crew to get their train safely into the siding before the arrival of the passenger train, or failing in this, by a fusee or other signal, to let the passenger engineer know that the main track was not clear. The passenger engineer could doubtless see from the faces of the switch stands, and he could

presume, in the absence of some signal to the contrary, that the main track was clear of both trains and men for his passage. In the absence of some such signal, he was not bound to anticipate that some member of the freight crew would be upon a track which it was their known duty to have open and clear. There is no evidence showing that 25 or 30 miles per hour is a negligent rate of speed for a passenger train, even on a stormy night, and the court cannot take judicial notice of any such fact. T. & N. O. Railway Co. v. Langham, 95 S. W. 686. "The statute does not require railroad trains to slacken their speed in crossing a public road, and unless the operatives of the train in any particular case are chargeable with knowledge of facts which would make it their duty, in the exercise of reasonable care, not to run the train over a public crossing at its usual rate of speed, it is not negligence for such operatives to fail to reduce the speed of their train when approaching a public road crossing." If we admit, as is contended by appellant, that the passenger engineer should have expected some member of the freight crew to cross over the main track, it does not appear that this knowledge would require him to reduce his speed upon approaching the siding. He had the right to expect that the members of the freight crew would be in a position of safety and would use reasonable diligence in taking such position prior to the arrival of his train. The evidence shows that they did see his train approaching for 2 or 3 miles. No reason is suggested why Sorrell did not, in alighting from the engine, get down on the side away from the main track. He had his lantern with him at the time and did not need the headlight of the approaching engine in making his way back toward the rear of his train.

[4-6] The evidence does not sustain the allegation that the passenger engineer was, before reaching that point, running faster than 25 to 30 miles per hour. According to the testimony of the witness who was looking at deceased just when he attempted to cross the main track, the issue of discovered peril is not in the case. Failure of the passenger engineer to signal upon approaching the siding is not made a ground of negligence, and under the fact is not available as such, if in truth no signal was given, and as to that the record is silent. Lack of experience on the part of the deceased or his inability to appreciate the danger is not shown, but it appears that he had been brakeman for two or three years. He was not required by any superior to go back to look after the break in his train at that particular time. He could have waited until after the passenger train passed, and if a position between the tracks was hazardous, he could have stepped between the box cars for safety, since they were made stationary by a brake in his train and would necessarily remain so until coupled again. If he thought it safer to be on the opposite side of the main track, he had the option of crossing, and it was within his discretion as to when he should exercise it. If we admit that the passenger engineer saw Sorrell when the engineer was 100 yards from him, at the time the latter alighted from the freight engine, this fact does not impose upon the engineer the duty to reduce his speed while passing.

The judgment is therefore affirmed.

⬗For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes